UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Timothy J. Campbell**

**v.**

Case No. 13-cv-278-PB
Opinion No. 2014 DNH 014

**Specialized Loan Servicing,
LLC, et al.**

MEMORANDUM AND ORDER

Timothy Campbell has sued the Bank of America, N.A., the
current holder of his mortgage note, and Specialized Loan
Servicing, LLC ("SLS"), his loan servicer.  Bank of America has
filed a motion to dismiss for failure to state a claim.  For the
reasons set forth in this Memorandum and Order, I grant the
motion to dismiss in part and deny it in part.

I.  BACKGROUND[1]

Campbell borrowed $50,000 from Countrywide Home Loans, Inc.
in 2006.  The note evidencing the loan is secured by a mortgage
on Campbell's primary residence that names Mortgage Electronic

---

[1] Unless otherwise specified, the background is taken from
Campbell's complaint or from the note and mortgage attached to
Bank of America's motion to dismiss.  See Doc. Nos. 1-1, 10-2,
10-3.  I consider the latter documents at this stage of
litigation because they are "documents central to the
plaintiff's claim." Worrall v. Fed. Nat. Mortg. Ass'n, 2013 DNH
158, 3 (quoting Rivera v. Centro Medico de Turabo, Inc., 575
F.3d 10, 15 (1st Cir. 2009)).

Registration Systems, Inc. ("MERS") as mortgagee and states that it is acting "as nominee for Lender."  Countrywide failed in 2008 and the note was subsequently assigned to Bank of America. The loan is currently being serviced by SLS.

For reasons that are not specified in the complaint, defendants initiated foreclosure proceedings against Campbell in 2009 and 2010, but each sale was cancelled for unstated reasons. Campbell is current on his mortgage and no further actions have been taken with respect to the foreclosure.  Nevertheless, defendants informed several credit reporting agencies that Campbell had a foreclosure in his credit history.

Campbell complains about alleged irregularities with respect to his loan agreement, including unexplained fluctuations in a principal balance that currently exceeds $47,000, although he "has no idea why it is so high after paying it for seven years."[2]  He claims that his monthly payments have tripled and that defendants improperly obtained hazard insurance on the property and passed the cost to him.  Campbell has "repeatedly" requested an accounting, and he claims never to have received a "legible, understandable and clear explanation"

---

[2] Campbell's loan agreement provides for adjustable rate loan of 10.125% and the possibility that the rate would increase to as high as 17.125%.  It has a term of thirty years with initial monthly payments of $443.41.  Doc. No. 10-2.

of how much he owes.

Campbell also alleges in general terms that defendants mishandled his loan modification requests.  He claims that Bank of America participated "half-heartedly" and without good faith in government loan modification programs aimed at providing debt relief to homeowners.  He also claims to be eligible for these programs and to have submitted applications with supporting documentation on numerous occasions, only to be told by defendants that the paperwork was either never received or was "lost."

On May 13, 2013, Campbell filed suit in Cheshire County Superior Court against SLS and Bank of America for declaratory relief, an accounting, and an injunction barring the defendants from foreclosing on his home.  He also seeks damages resulting from adverse credit reporting regarding the foreclosure proceedings.  Bank of America later removed the case to this court and filed the present motion to dismiss.

## II.  <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550

U.S. 544, 570 (2007)).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citations omitted).

In deciding a motion to dismiss, I employ a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  Second, I credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations and then determine if the claim is plausible. Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely

4

conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").


### III.  ANALYSIS

#### A.  Entitlement to a Loan Modification

Campbell seeks a declaration that he has a right to a loan modification under "terms previously proposed" by Bank of America.  This court has consistently held that lenders generally have no duty to modify loan terms absent express contractual language to the contrary.  See, e.g., Moore v. Mortg. Elec. Reg. Sys., Inc., 848 F. Supp. 2d 107, 130 (D.N.H. 2012); Gikas v. JPMorgan Chase Bank, N.A., 2013 DNH 057, 8; Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-PB, 2012 WL 5845452, at *3 (D.N.H. Nov. 19, 2012).  This is so because "[p]arties are bound by the agreements they enter into and the court will not . . . force a party to rewrite a contract so as to avoid a harsh or inequitable result." Ruivo, 2012 WL 5845452 at *4 (citing Moore, 848 F. Supp. 2d at 130; Olbres v. Hampton Co-op. Bank, 142 N.H. 227, 233 (1997)).  Campbell does not argue that a contractual provision entitles him to a loan modification.  Nor has he sufficiently pleaded a claim that any

state or federal law gives him a statutory right to seek a modification.  Accordingly, I dismiss his loan modification claims against Bank of America.

**B.    UDUCPA**

Campbell next argues that defendants violated New Hampshire's Unfair, Deceptive or Unreasonable Collection Practices Act ("UDUCPA") by falsely reporting that he had suffered a foreclosure.  UDUCPA states that "[n]o debt collector shall collect or attempt to collect a debt in an unfair, deceptive or unreasonable manner." N.H. Rev. Stat. Ann. § 358-C:2.  Campbell asserts that Bank of America violated UDUCPA section 358-C:3(III) by taking actions "which the debt collector in the regular course of business does not take."  Although Campbell acknowledges that Bank of America twice initiated foreclosure proceedings, he argues that his home was never actually foreclosed upon.  By reporting a foreclosure to credit agencies and refusing Campbell's request to remove the misinformation, Campbell's argument goes, Bank of America engaged in deceptive conduct in violation of UDUCPA.

The only argument Bank of America presents in support of its motion to dismiss the UDUCPA claim is that the claim is defective because it fails to sufficiently allege that Bank of America falsely reported that Campbell had suffered a

6

foreclosure.  According to Bank of America, Campbell's complaint alleges only that defendants reported that a foreclosure proceeding had been commenced against Campbell.  Since Campbell acknowledges in his complaint that defendants initiated a foreclosure proceeding against him, Bank of America reasons, his UDUCPA claim necessarily fails because its report was not false.  I reject this argument because it is based on a misreading of Campbell's complaint.  Read generously, the complaint alleges that Bank of America falsely reported that Campbell had suffered a foreclosure - not merely that a foreclosure proceeding had been commenced against him.  Since Bank of America does not challenge the UDUCPA claim on any other ground, I deny its motion to dismiss this count.

**C.    CPA**

Campbell also argues that Bank of America violated the New Hampshire Consumer Protection Act ("CPA") by (1) refusing his loan modification requests with the "express intent and purpose" to initiate foreclosure; and (2) entering into a contract with Campbell while knowing that he would not be able to afford his monthly payments.

Bank of America responds by invoking section 358-A:3(I) of the New Hampshire Revised Statutes, which exempts from the CPA "[t]rade or commerce that is subject to the jurisdiction of the

bank commissioner . . . or federal banking or securities regulators who possess the authority to regulate unfair or deceptive trade practices." As a national bank, Bank of America argues that it is subject to the comprehensive regulations of the Office of the Comptroller of the Currency ("OCC") and is therefore exempt from the CPA's requirements.

Business activities of national banks and their operating subsidiaries are controlled by the National Bank Act ("NBA") and OCC regulations. Atkins v. U.S. Bank Nat'l Ass'n, 2014 DNH 001, 7-8. (citing Watters v. Wachovia Bank, N.A., 550 U.S. 1, 6, 21 (2007)). These business activities include real estate lending. 12 U.S.C. § 371. National banks can make real estate loans "without regard to state law limitations concerning," among other things, the terms of a loan, including "the circumstances under which a loan may be called due and payable" and the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 34.4(a)(4, 10). Bank of America is registered with the OCC as a national bank.[3] The OCC's power to regulate national banks is

---

[3] U.S. Dep't of the Treasury, Office of the Comptroller of the Currency, National Banks Active as of 11/30/2013, http://www.occ.gov/topics/licensing/national-bank-lists/national-by-name-pdf.pdf (listing Bank of America as a national bank).

comprehensive, and the OCC "plainly has the authority to protect consumers from the same kinds of fraudulent, deceptive, and unfair practices that are targeted by the Consumer Protection Act." Aubertin v. Fairbanks Capital Corp., 2005 DNH 021, 6 (citing OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, AL 2002-3, 2002 WL 521380 at * 2-3 (March 22, 2002)).  Bank of America invoked the OCC's power in its motion to dismiss, and cited relevant law to support its exemption argument.  It need do no more.  See Atkins, 2014 DNH 001, 8.

**D.   Misrepresentation**

Campbell also asserts claims for intentional and negligent misrepresentation, arguing that "neither [defendant] ever seriously entertained" his loan modification applications. Rather, they "intentionally misled" him into believing they would consider his applications, then repeatedly "lost" the applications with the goal of foreclosing on his home.

Claims asserting intentional or negligent representation are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. Moore, 848 F. Supp. 2d at 132.  As such, any allegation "must specify the who, what, where, and when of the allegedly false or fraudulent representations."  Id.  Under New Hampshire law, a plaintiff must show "that the representation was made with knowledge of its falsity or with conscious

9

indifference to its truth." LeDoux v. JP Morgan Chase, N.A., No. 12-cv-260-JL, 2012 WL 5874314, at *11 (D.N.H. Nov. 20, 2012) (citing Tessier v. Rockefeller, 162 N.H. 324, 332 (2011)).

Here, Campbell fails to plead his misrepresentation claims with anything resembling the required specificity.  Aside from generalities, he submits no evidence of any specific representations by Bank of America.  He does not allege who made particular statements or when they were made, and he makes only general allegations as to content.  Campbell's misrepresentation claims thus fail due to lack of specificity.

**E.    Interference with a Valid Business Relationship**

Using the same general allegations as above, Campbell alleges that each defendant "intentionally, recklessly and negligently interfered with a valid business relationship existing between" himself and the other defendant.  In essence, he argues that Bank of America intentionally interfered with his business relationship with SLS, and vice versa.

To assert such a claim against Bank of America, Campbell must allege that (1) he had an economic relationship with SLS; (2) Bank of America knew of this relationship; (3) Bank of America intentionally and improperly interfered with the relationship; and (4) Campbell was damaged by the interference. See Johnson v. Capital Offset Co., Inc., No. 11-cv-459-JD, 2013

WL 3930694, at *3 (D.N.H. Jul. 30, 2013) (citing Singer Asset
Fin. Co., LLC v. Wyner, 156 N.H. 468, 478 (2007)).  Any such
interference must be motivated by an improper purpose.  Id.
(citing Nat'l Emp't Serv. Corp. v. Olsten Staffing Serv., Inc.,
145 N.H. 158, 162 (2000)).

Campbell alleges no facts that would permit a plausible
inference that Bank of America intentionally and improperly
interfered with his business relationship with SLS.  This is a
threadbare recital that fails to state a viable claim for
relief.  See Ocasio-Hernandez, 640 F.3d at 12.

**F.   Request for Accounting**

Campbell requests that SLS and Bank of America "provide an
accurate, complete and current accounting of his entire payment
history on the mortgage," including disbursements from escrow
for tax, insurance, and other payments made on his behalf.  He
also requests that I issue a declaratory judgment of the amount
he owes on the mortgage.  Campbell alleges that he "repeatedly
requested an accounting of his payment history on the mortgage
and an accounting of his disbursements made from escrow, yet he
has not received legible, understandable and clear explanation

as to applications of the payments he has made and the
disbursements from his account that have been made on his
behalf."  Bank of America allots a mere footnote to this
allegation, arguing, without providing supporting authority,
that only the current servicer, SLS, is able to provide a full
accounting.

Any accounting obligations that SLS conceivably owes to
Campbell are derivative of Bank of America's contractual
obligations as note holder.  I thus reject Bank of America's
challenge to Campbell's request for an accounting.  For similar
reasons, I deny Bank of America's motion to dismiss Campbell's
request for declaratory relief stating the amount he owes on the
mortgage.

**IV.   CONCLUSION**

For the reasons discussed above, I grant Bank of America's
motion to dismiss (Doc. No. 10) with respect to all of
Campbell's claims against Bank of America except his claim for a
declaratory judgment stating the amount he owes on his loan
(Count I), an accounting (Count II), and his UDUCPA claim (Count
III).

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 23, 2014

cc:   Timothy J. Campbell, pro se
      Michael P. Robinson, Esq.
      John Harold McCann, Esq.
      Thomas J. Pappas, Esq.